# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA L. SALAZAR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-13-878-F |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Teresa L. Salazar brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 8, hereinafter "R._"). The parties have briefed their positions and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her applications for DIB and SSI on January 10, 2011,

alleging a disability onset date of May 20, 2008, and seeking benefits on the basis of major depression, bipolar disorder, and back pain. R. 151, 157, 204, 208. Following denial of her applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 9, 2012. R. 35-77, 78-84. At the hearing Plaintiff, through her attorney, amended her alleged disability onset date to July 1, 2010. R. 16, 37-38. In addition to Plaintiff, a vocational expert ("VE") appeared and testified at the hearing. R. 60-76. The ALJ issued an unfavorable decision on April 30, 2012. R. 16-28.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged disability onset date through the date of the decision. R. 19; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the following severe impairments: status post left ankle arthroscopy, complete synovectomy, microfracture/microabrasion of the talus, and loose body removal from the anterior gutter; anxiety; and depression. R. 18-19; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ also determined that Plaintiff's alleged mild mental retardation ("MMR") was not a medically determinable impairment. R. 19.[1] At step three, the ALJ determined that

---

[1] On August 1, 2013, the SSA announced a final rule to replace the term "mental retardation" with "intellectual disability" in the Listings, noting that "the term 'mental retardation' has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." *See*

Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 19-21; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 21-26; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform light work, subject to further exertional and nonexertional limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except sit 6 hours; stand 6 hours; perform simple and some detailed tasks with routine supervision; no public contact or customer service; able to interact appropriately with supervisors and co-workers on a superficial work basis; and able to adapt to work situations.

R. 21; *see* 20 C.F.R. § 404.1567(b) (defining "light work"); *id.* § 416.967(b) (same). The ALJ determined at step four that Plaintiff was unable to perform any of her relevant work (administrative clerk, patient care assistant, and corrections officer), as the demands of that work exceeded Plaintiff's RFC. R. 26; *see* 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 27. Taking into consideration the VE's testimony regarding the degree of erosion to Plaintiff's occupational base caused by

---

Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,499 (Aug. 1, 2013). The change in terminology did not substantively alter the Listings. *See id.* at 46,501. In this Report and Recommendation, the undersigned uses the terms "mental retardation" and "intellectual disability" interchangeably due to reference to the former term in the medical records as well as the ALJ's decision.

3

Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as textile sewing machine operator, hand packer, and motel cleaner, all of which offer jobs that exist in significant numbers in the national economy. R. 27; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from July 1, 2010, through the date of the decision. R. 27; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff raises several claims of error on appeal. Plaintiff's first contention is that the ALJ failed to conduct an impartial hearing due to the ALJ's prejudice and bias toward Plaintiff's lesbian relationship. Plaintiff next argues that the ALJ's determination is not supported by substantial evidence, based upon: the ALJ's error in analyzing Plaintiff's IQ test; the ALJ's failure to adequately support the conclusion that Plaintiff retains the RFC to perform restricted light work; and the ALJ's failure to properly assess Plaintiff's credibility and complaints of pain. *See* Pl.'s Br. (Doc. No. 10) at 4-14.

**I. Whether Reversal Is Required Due to the ALJ's Prejudice and Bias**

At the hearing, and as reflected in her medical records, Plaintiff testified that the death of her girlfriend in 2008 caused her great emotional distress and that thereafter she suffered depression and inability to participate in certain activities. R. 50-51; *see also* R. 385, 398, 405. According to Plaintiff, "As this testimony was presented the ALJ was holding papers [that] she tossed onto her desk in a dramatic display of disgust. In light of this prejudice against gay people, [Plaintiff] did not receive a fair hearing." Pl.'s Br. at 5. Plaintiff offers no other factual support and points to nothing in the ALJ's written determination—beyond the fact that her applications were denied—for this contention of prejudice.

If Plaintiff believed the assigned ALJ was prejudiced against her, she was required by the applicable regulations to "notify the [ALJ] at [her] earliest opportunity." *See* 20

C.F.R. §§ 404.940, 416.1440. Plaintiff did not object when the alleged throwing of papers occurred or at any time during the administrative hearing. R. 35-77. Nor did Plaintiff object during the two and one-half month period between the conclusion of the hearing and the issuance of the ALJ's decision. *See*, *e.g.*, R. 264 and 202 (post-hearing letters from Plaintiff's counsel to ALJ addressing evidentiary questions raised during hearing). The first objection indicated by the record occurred after the ALJ's unfavorable decision, when bias was raised by Plaintiff in requesting Appeals Council review. *See* R. 265-68.

The applicable regulations require that an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party." 20 C.F.R. §§ 404.940, 416.1440; *see Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990) ("An ALJ is required to be fair and impartial, not prejudiced against a claimant . . . ."). Even if assumed to be true, however, Plaintiff's mere allegation that the ALJ "tossed" papers onto her desk "in a dramatic display of disgust" does not demonstrate prejudice requiring reversal of this matter. There is nothing in the hearing transcript, the administrative record, or the ALJ's decision that would connect a tossing of papers with Plaintiff's testimony regarding her girlfriend or otherwise evidence prejudice against Plaintiff on the part of the ALJ. Nor is there any allegation or indication that Plaintiff was denied the opportunity to develop a full and adequate record in this case. *See Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996) (rejecting a claimant's assertion of bias when claimant received a full opportunity to develop the record). To the contrary, the ALJ specifically requested that Plaintiff submit additional medical records, R. 56-57, 63-65, and after the hearing accepted further

submissions from Plaintiff's attorney, R. 202-03, 264.

In sum, Plaintiff's naked, conclusory allegation cannot overcome the "presumption of honesty and integrity in those serving as adjudicators" in administrative proceedings. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The mere denial of benefits is insufficient; "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* "*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display. *Id.* at 555-56 (discussing challenges to federal judges); *see Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (holding that an ALJ's remarks were not biased because they did not "'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible'" (quoting *Liteky*, 510 U.S. at 555)). Here, Plaintiff has not *demonstrated* bias on the part of the ALJ, properly objected to by Plaintiff, such as would warrant reversal on this claim of error.

**II. Whether the ALJ's Determination Is Supported by Substantial Evidence**

*A. The ALJ's Assessment of Plaintiff's Alleged Intellectual Disability*

On March 9, 2011, Plaintiff underwent a consultative psychological evaluation by Darline Thorson, Ph.D. *See* "Psychological Report" (R. 602-05). Dr. Thorson reported that Plaintiff "was oriented to person, place, time, and date," and that Plaintiff's "receptive and expressive language abilities were normative." R. 604. Dr. Thorson

noted: "[Plaintiff's] speech was without tangential, delusional, or other psychotic content. Her thought processes were goal oriented and organized." R. 604. Dr. Thorson stated that Plaintiff "reported that she attended the 12th grade and later obtained her GED. She also obtained 20 college credits—basic classes." R. 604. Dr. Thorson also signed a Capability Opinion expressing her opinion that Plaintiff could manage benefit payments in her own interest, noting that Plaintiff "[c]urrently handles her own purchasing and manages her own money." R. 602.

The Psychological Report provided the results of the IQ test administered by Dr. Thorson:

> [Plaintiff] received a Verbal Comprehension Index (VCI) score of 72, a Perceptual Reasoning Index (PRI) score of 75, a Working Memory Index (WMI) score of 63, and a Processing Speed Index (PSI) score of 59. Her Full Scale IQ (FSIQ) score is 63[,] which reflects Mild Mental Retardation.

The ALJ discussed this Psychological Report in detail in her decision. R. 19, 21. At step two, the ALJ noted the full-scale IQ score of 63 but found that Plaintiff's MMR was not a medically determinable impairment: "The claimant's capabilities of managing her own money, obtaining a GED, obtaining 20 hours in college credits, and maintaining a work history for many years at the SVP level of 4 is inconsistent with a finding of mild mental retardation." R. 19. At step three, in concluding that Plaintiff's condition did not meet or equal the severity of Listing 12.05C, the ALJ stated that Plaintiff's full-scale IQ score "is brought into question by her educational level." R. 21. And in assessing Plaintiff's RFC, the ALJ assigned "no weight" to Plaintiff's MMR, which was noted by a state medical consultant in a psychiatric review technique form assessing Plaintiff's

8

mental impairments pursuant to Listings 12.04 (affective disorders) and 12.05 (mental retardation). R. 25, 624-37.

Plaintiff does not challenge the ALJ's specific conclusions at steps two or three. *See* Pl.'s Br. at 5, 6-7. Rather, Plaintiff asserts that the ALJ "misrepresents the facts" because the decision incorrectly states that Dr. Thorson's Psychological Report was issued on March 9, 2010, rather than the correct date of March 9, 2011. *See* Pl.'s Br. at 6-7; R.19. According to Plaintiff, this error undermines the ALJ's decision to give the March 2011 finding of Plaintiff's MMR no weight because Plaintiff was injured in a motorcycle accident in September 2010. Pl.'s Br. at 7. Plaintiff argues that this motorcycle accident was "an interceding event" between Plaintiff earning her GED and the IQ test, the head injury from which "resulted in cognitive and mental functional loss, and therefore "it was not logical to give no weight to the low IQ score in 2011." Pl.'s Br. at 7.

Plaintiff's argument is unavailing. It is true that Plaintiff received treatment for injuries sustained to her head, ribs, left elbow, left wrist, and left ankle due to a motorcycle accident on September 18, 2010. *See, e.g.*, R. 479, 485-525. These injuries included temporary loss of consciousness with laceration on left forehead and skull fracture in the form of multiple fractures of facial bones and a fracture of the left orbital wall. R. 485-90. The physicians who treated Plaintiff shortly after the accident at an area hospital performed a CT scan and found that "no operative intervention is necessary." R. 486, 490. Instead, Plaintiff was instructed to use nasal saline rinses, avoid blowing her nose, and to watch for any sign of a cerebrospinal fluid leak. R. 490. Plaintiff also

visited an ear, nose, and throat clinic on October 26, 2010, but only complained of occasional numbness in the tip of her nose; the physician's assistant who assessed her stated that Plaintiff was not having diplopia, double vision, or facial asymmetry, and "is really not having headaches any more." R. 503. It was again opined that surgery is not necessary. R. 503. Although Plaintiff continued to receive treatment for her other accident-related injuries to her elbow and ankle, *see, e.g.*, R. 554-59, 567-74, there is no indication that Plaintiff sought further treatment for her head injuries.

Plaintiff fails to cite any specific evidence in the record supporting the contention that her head injury "resulted in cognitive and mental functional loss." Pl.'s Br. at 7. Nor does Plaintiff offer any legal authority for this proposition. There was no such allegation raised to the ALJ. Plaintiff's omission notwithstanding, the undersigned has found no suggestion or conclusion to this effect in any of Plaintiff's post-September 2010 medical treatment records, including the Psychological Report itself. *See* R. 602-05, 628, 634-36; *cf.* R. 478 (Julia Irwin, M.D., noted that Plaintiff reported on September 30, 2010, that she "has a new appreciation for life" and is no longer as depressed), 477 (Dr. Irwin noted that Plaintiff is the "[b]est I have seen her" and "[s]tates she is feeling very good"). Further, the ALJ's error in dating Dr. Thorson's Psychological Report did not otherwise prejudice Plaintiff; even assuming the ALJ actually believed the Report had been issued in March 2010—i.e., prior to the amended alleged disability onset date of July 1, 2010— the ALJ nonetheless fully considered the Psychological Report. R. 19, 21; *cf.* 20 C.F.R. § 404.1512(d) ("[W]e will develop the complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe

that development of an earlier period is necessary. . . ."); *id.* § 416.912(d) (same). The ALJ thoroughly explained her rationale for assigning no weight to the MMR finding associated with the IQ score of 63, and that rationale is unaffected by whether the MMR finding was made in 2010 or 2011. R. 19, 21, 25. Reversal is not warranted on this basis.

### B. *Whether the ALJ Adequately Supported the RFC Finding*

Plaintiff next argues that the ALJ's decision fails to provide an adequate rationale and evidentiary support for finding that Plaintiff retained the RFC to perform "light" work. Pl.'s Br. at 7-9. According to Plaintiff, "the ALJ adequately described how the evidence supports the RFC conclusion concerning her mental impairment" but did not provide an adequate rationale with respect to Plaintiff's physical impairments. Pl.'s Br. at 8.

As noted above, the ALJ found that Plaintiff had the physical RFC to perform light work with standing or sitting limited to six hours. R. 21; *see also* R. 73-74. Plaintiff first objects that the Plaintiff erred in assigning little weight to the physical RFC assessment conducted by Luther Woodcock, M.D., and the affirmation of that assessment by James Metcalf, M.D. Pl.'s Br. at 8-9; R. 638-45, 669. The ALJ's RFC finding, however, was actually *more favorable* to Plaintiff than Dr. Woodcock's physical RFC assessment. The ALJ found that Plaintiff was able to perform "light work"—i.e., "lifting no more than 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds." R. 21; 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Woodcock, however, opined that Plaintiff was able to occasionally lift up to 50 pounds, to frequently lift up to 25

11

pounds, and to engage in unlimited pushing and/or pulling. R. 639. Plaintiff therefore cannot demonstrate that the ALJ's assignment of little weight to Dr. Woodcock's physical RFC assessment, and Dr. Metcalf's affirmation of the same, renders the RFC insufficiently supported.

Plaintiff also indicates that error lies because the ALJ neither rejected nor stated the weight assigned to a treating source opinion. Pl.'s Br. at 7; *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (RFC assessment must be based on all relevant evidence in the case record). However, Plaintiff fails to cite any opinion that the ALJ should have rejected or weighed. Pl.'s Br. at 7. Nor does Plaintiff cite any opinion or hearing testimony that contradicted either Dr. Woodcock's or the ALJ's physical RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting a lack-of-substantial-evidence argument where there was no evidence or testimony contradicting the ALJ's conclusion that claimant retained the capacity for light work). It follows that Plaintiff cannot demonstrate that the RFC assessment is not supported by substantial evidence on the basis of being "overwhelmed by other evidence in the record." *See Branum*, 385 F.3d at 1270 (internal quotation marks omitted). The undersigned may not speculate, reweigh the evidence, or develop appellate arguments on Plaintiff's behalf. *See Bowman*, 511 F.3d at 1272; *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

Plaintiff more broadly argues that the ALJ failed to provide a "specific detail analysis as to how the evidence supports each conclusion that [Plaintiff] was capable of 'Light' work." Pl.'s Br. at 8. According to Plaintiff, the ALJ's RFC assessment therefore

is not based upon substantial evidence—i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pl.'s Br.at 9; *Doyal*, 331 F.3d at 760 (internal quotation marks omitted). Contrary to Plaintiff's suggestion, however, "there is no requirement in the regulation for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Because the ALJ, not a physician, is tasked with determining the RFC based upon the medical record, the Tenth Circuit has rejected the argument that there must be specific medical evidence cited in the RFC as to each requirement of an exertional work level. *Id.* at 1288-89.

Here, the ALJ specifically cited to various medical records in the course of determining that Plaintiff could perform light work, subject to 6-hour sitting and standing limitations. For example, the ALJ described how Plaintiff was diagnosed at the hospital with skull fracture and other injuries arising from her September 2010 motorcycle accident and explained in detail Plaintiff's complaints and diagnosis from her October 2010 visit to the ear, nose, and throat clinic (both described *supra* Part II(A)). R. 23. The ALJ also discussed numerous records, tests, and diagnoses associated with Plaintiff's elbow and ankle impairments and internal shakiness. R. 24-25. The ALJ discussed this medical evidence together with citation to the relevant regulations, which set forth the lifting, carrying, walking, standing, and sitting physical exertion requirements for "light work." R. 21 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). The ALJ further discussed testimony and evidence relevant to Plaintiff's ability to perform these requirements. *See, e.g.*, R. 22 (Plaintiff's testimony and statements regarding sitting, standing, walking,

13

lifting), 24 (medical records speaking to Plaintiff's weight-bearing activities following ankle surgery). *See generally* 20 C.F.R. §§ 404.1545(a)(3), (b), 416.945(a)(3), (b).

Thus, the RFC assessment has far more than "a mere scintilla of evidence supporting it" and is not unsupported by substantial evidence on that basis. *See* R. 23-25; *Branum*, 385 F.3d at 1270 (internal quotation marks omitted). Because the ALJ's RFC determination is supported by substantial evidence as outlined above, this matter should not be reversed on this basis.

### C. *Whether the ALJ Erred in Assessing Plaintiff's Credibility*

The assessment of a claimant's RFC generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about the symptom(s) and its functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link her credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with her medically determinable impairments to substantial evidence in the record. Pl.'s Br. at 9-14; SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). *See also* R. 21-22.

The ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause [Plaintiff's] alleged symptoms. R. 23. The ALJ specifically concluded, however, that Plaintiff's statements regarding "the intensity,

14

persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with" the ALJ's RFC assessment (outlined herein *supra*). *See* R. 23. Regarding Plaintiff's physical impairments, the ALJ noted that Plaintiff's activity of riding a motorcycle in September 2010 "far exceeds [Plaintiff's] reported activities of daily living," "exceeds the level of activity one would expect," and is contradictory to Plaintiff's statement that "she only drives when absolutely necessary." R. 23. The ALJ also noted that Plaintiff at one point reported occasionally driving an automobile when she had to and her depression had stabilized after adjustments to her medication. R. 23. The ALJ noted that Plaintiff reported in February 2011 that she cared for her children, kept and prepared food, shopped for groceries, and helped with laundry. R. 22. Regarding Plaintiff's September 2010 elbow and ankle injuries, the ALJ's description showed no complications: Plaintiff was to use a wrist brace, Motrin, and Voltaren gel for the elbow, and, following ankle surgery, Plaintiff consistently was "doing well" and could continue weight bearing activities and a home exercise program. R. 22-23.

Viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that ALJ considered the prescribed factors in assessing Plaintiff's credibility—e.g., "daily activities"; treatment received; and "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 21-25; SSR 96-7p, 1996 WL 374186, at \*3. A claimant's ability to care for children and engage in daily activities, favorable

postoperative reports and lack of necessity for additional medical treatment, and her contradictory statements all may support an adverse credibility assessment. *See Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012); *Holcomb v. Astrue*, 389 F. App'x 757, 761 (10th Cir. 2010). The Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Because the ALJ closely and affirmatively linked her credibility findings to substantial evidence, reversal is not warranted on this point. *See* R. 21-25.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 23, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 9th day of September, 2014.

_/s/ Charles B. Goodwin_
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE